United States Court of Appeals,

Eleventh Circuit.

No. 94-3081.

In re OLYMPIA HOLDING CORPORATION, et al., Debtors.

Lloyd T. WHITAKER, as Trustee of the Estate of Olympia Holding Corporation, Plaintiff-Appellant,

v.

POWER BRAKE SUPPLY, INC., a Texas Corporation, Defendant-Appellee,

United States of America, on behalf of the Interstate Commerce Commission, Intervenor-Appellee.

Nov. 15, 1995.

Appeal from the United States District Court for the Middle District of Florida. (No. 91-1077-CIV-J-16), jOHN h. mOORE, ii, cHIEF jUDGE.

Before HATCHETT and CARNES, Circuit Judges, and OWENS[*], Senior District Judge.

HATCHETT, Circuit Judge:

In this appeal, we affirm the district court's ruling that Bankruptcy Code sections 363(*l* ) and 541(c)(1) do not proscribe the application of the Negotiated Rates Act of 1993 (NRA), partially codified at 49 U.S.C. § 10701(f), to a bankruptcy trustee's undercharge claim.

INTRODUCTION

The Motor Carrier Act of 1980 (MCA), Pub.L. No. 96-296, 94 Stat. 793, substantially deregulated the trucking industry. At the same time, the Interstate Commerce Act, 49 U.S.C. § 10101, *et seq.,* mandated that motor carriers file their rates with the Interstate

---

[*]Honorable Wilbur D. Owens, Jr., Senior U.S. District Judge for the Middle District of Georgia, sitting by designation.

Commerce Commission (ICC), and that carriers and shippers adhere to those rates. Many carriers, however, responding to the increased competition the MCA fostered, negotiated and charged rates lower than those they had filed with the ICC. When some of those carriers later filed for bankruptcy, their trustees attempted to recover the "undercharge" amounts—the difference between the filed rate and the negotiated rate—to benefit the bankruptcy estates. *See generally Maislin Indus. v. Primary Steel,* 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990).

In 1989, the ICC adopted a policy determining that "a carrier engages in an unreasonable practice when it attempts to collect the filed rate after the parties have negotiated a lower rate." *Maislin,* 497 U.S. at 130, 110 S.Ct. at 2768. In *Maislin,* however, the Supreme Court rejected the ICC's policy, finding that it violated the Interstate Commerce Act. *Maislin,* 497 U.S. at 133, 110 S.Ct. at 2769. The Court concluded that "[i]f strict adherence to §§ 10761 and 10762 [of the Interstate Commerce Act] as embodied in the filed rate doctrine has become an anachronism in the wake of the MCA, it is the responsibility of Congress to modify or eliminate these sections." *Maislin,* 497 U.S. at 135-36, 110 S.Ct. at 2771.

In response to the *Maislin* decision, Congress enacted the Negotiated Rates Act of 1993 (NRA), Pub.L. No. 103-180, 107 Stat. 2044, partially codified at 49 U.S.C. § 10701(f) (1995), which, as discussed below, provides relief to shippers faced with undercharge claims. In this case, we address for the first time the applicability of the NRA to a bankruptcy trustee's undercharge

claim.

## BACKGROUND

During the 1980s and 1990, P*I*E Nationwide, Inc. (P*I*E), a large trucking company, provided motor carrier services at a negotiated rate for appellee Power Brake Supply, Inc. (Power Brake). Power Brake paid the negotiated rate as billed. On October 16, 1990, P*I*E filed for bankruptcy under chapter 11 of the Bankruptcy Code. Around December 30, 1990, P*I*E ceased operations. The bankruptcy court later converted the case to a chapter 7 proceeding and appointed appellant Lloyd Whitaker as trustee for the estate.[1]

Since July 1991, Whitaker has instituted approximately 32,000 adversary proceedings in bankruptcy court against P*I*E's former customers, including Power Brake. As of February 1993, the United States District Court for the Middle District of Florida had withdrawn the bankruptcy court references in approximately 250 of those proceedings. On February 12, 1993, the district court entered a case management order that implemented a lead case approach to resolving issues common to the withdrawn cases.[2] In February 1994, the district court selected the instant action to resolve the issue of the applicability of the NRA to Whitaker's undercharge claims.

Whitaker's amended complaint asserts an undercharge claim for

---

[1]P*I*E is now known as Olympia Holding Corporation.

[2]This case involves an undercharge claim based on a challenge to negotiated rates. For simplicity, we will refer to this type of claim as an undercharge claim. Whitaker has also pursued undercharge claims challenging the coded rates and contract carriage rates that P*I*E charged its customers.

$3,516.88 against Power Brake. In January 1994, Power Brake moved to dismiss the complaint pursuant to section 2(a)(9) of the NRA, 49 U.S.C. § 10701(f)(9), which exempts small-business concerns from undercharge liability. In support of its motion, Power Brake submitted an affidavit from its chief executive officer stating that it qualified as a small-business concern under the NRA. In July 1994, the district court granted Power Brake's motion, and this appeal followed.

## CONTENTIONS

Whitaker contends that sections 363(*l* ) and 541(c)(1) of the Bankruptcy Code preclude application of section 2(a) of the NRA to his undercharge claim. Therefore, he argues that the district court erred in granting Power Brake's motion.[3] In response, Power Brake argues that the district court properly ruled that sections 363(*l* ) and 541(c)(1) do not proscribe the application of the NRA to Whitaker's claim.

---

[3]Whitaker presses two other claims that we reject without lengthy discussion. Whitaker first argues that the NRA effectuates a taking of private property without just compensation in violation of the Fifth Amendment. Though Whitaker did not raise this argument in the district court, we exercise our discretion to address this claim. *See Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360-61 (11th Cir.1984). We conclude that Whitaker's takings challenge lacks merit. *See Jones Truck Lines, Inc. v. Whittier Wood Prod. Co. (In re Jones Truck Lines, Inc.),* 57 F.3d 642, 651 (8th Cir.1995) (*Whittier* ) ("[T]he NRA is a valid exercise of congressional authority to regulate commerce, not an unconstitutional taking.").

We also find that Whitaker's argument that Power Brake did not meet its burden of proof lacks merit. Whitaker contends that the district court improperly precluded him from conducting discovery on this issue. This contention is not sustainable. The record supports the district court's holding that the general stay of discovery governing this action was lifted in September 1993.

ISSUE

The issue we address in this case is whether the district court erred in holding that the small-business exemption of the NRA applies to insulate Power Brake from Whitaker's undercharge claim.

DISCUSSION

The district court fashioned its order as a dismissal of Whitaker's amended complaint. In rendering its decision, however, the district court considered an affidavit furnished in support of Power Brake's motion to dismiss. Therefore, we treat the district court's ruling as one granting summary judgment for Power Brake. *See* Fed.R.Civ.P. 12(b). "We review the district court's ruling on a motion for summary judgment *de novo* and apply the same standards as those controlling the district court." *Adams v. Poag,* 61 F.3d 1537, 1542 (11th Cir.1995).

Whitaker asserts that the district court erred in holding that the small-business exemption of section 2(a)(9) of the NRA, 49 U.S.C. § 10701(f)(9), applies to his undercharge claim against Power Brake.[4] Whitaker argues that sections 363(*l* ) and 541(c)(1) of the Bankruptcy Code (the Code) preclude the application of the exemption to his claim.

Section 2(a)(1) of the NRA, 49 U.S.C. § 10701(f)(1), provides in pertinent part:

> (1) In general.—When a claim is made by a motor carrier of property ..., by a freight forwarder ..., or by a party representing such a carrier or freight forwarder regarding the collection of rates or charges for such transportation in addition to those originally billed and collected by the carrier or freight forwarder for such transportation, the

---

[4]Section 2(a) of the NRA adds subsection (f) to 49 U.S.C. § 10701.

person against whom the claim is made may elect to satisfy the claim under the provisions of paragraph (2), (3), or (4) of this subsection, upon showing that—

(A) *the carrier or freight forwarder is no longer transporting property* or is transporting property for the purpose of avoiding the application of this subsection; and

(B) with respect to the claim—

(i) the person was offered a transportation rate by the carrier or freight forwarder other than that legally on file with the Commission for the transportation service;

(ii) the person tendered freight to the carrier or freight forwarder in reasonable reliance upon the offered transportation rate;

(iii) the carrier or freight forwarder did not properly or timely file with the Commission a tariff providing for such transportation rate or failed to enter into an agreement for contract carriage;

(iv) such transportation rate was billed and collected by the carrier or freight forwarder; and

(v) the carrier or freight forwarder demands additional payment of a higher rate filed in a tariff.

49 U.S.C. § 10701(f)(1) (1995) (emphasis added).[5]  Section 2(e)(1)

of the NRA states:

(1) General rule.—For purposes of section 10701 of title 49, United States Code, it shall be an unreasonable practice for a motor carrier of property ... providing transportation

---

[5]Paragraph (2), NRA section 2(a)(2), enables shippers to settle undercharge claims relating to shipments weighing 10,000 pounds or less "by payment of 20 percent of the difference between the carrier's applicable and effective tariff rate and the rate originally billed and paid."  49 U.S.C. § 10701(f)(2) (1995).  Paragraph (3), NRA section 2(a)(3), allows shippers to pay 15 percent of the undercharge amount to satisfy claims involving shipments of more than 10,000 pounds.  49 U.S.C. § 10701(f)(3) (1995).  Paragraph (4), NRA section 2(a)(4), permits shippers to pay 5 percent of the undercharge amount to settle claims involving public warehousemen.  49 U.S.C. § 10701(f)(4) (1995).

subject to the jurisdiction of the Commission ..., a freight forwarder ..., or a party representing such a carrier or freight forwarder to attempt to charge or to charge for a transportation service provided before September 30, 1990, the difference between the applicable rate that is lawfully in effect pursuant to a tariff that is filed ... by the carrier or freight forwarder applicable to such transportation service and the negotiated rate for such transportation service *if the carrier or freight forwarder is no longer transporting property* ... or is transporting property ... for the purpose of avoiding the application of this subsection.

49 U.S.C. § 10701 note (1995) (emphasis added).

Section 363(*l* ) of the Code renders unenforceable laws that operate to limit a trustee's right to use, sell, or lease estate property because of the debtor's insolvency or financial condition. Section 363(*l* ) reads:

(*l* ) Subject to the provisions of section 365, the trustee may use, sell, or lease property under subsection (b) or (c) of this section ... notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor ... and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interest in such property.

11 U.S.C. § 363(*l* ) (1993).  Section 541(c)(1) of the Code protects against the enforcement of laws that would prevent a debtor's property from becoming a part of its estate due to the debtor's insolvency or financial condition:

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor;  or

(B) that is conditioned on the insolvency or financial condition of the debtor ... and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1) (1993).

Whitaker contends that section 2 of the NRA applies only to carriers "no longer transporting property," and thus constitutes (1) applicable law, (2) "that is conditioned on the insolvency or financial condition of the debtor," and (3) effects a forfeiture, modification, or termination of the debtor's interest in property, i.e., the undercharge claims. Accordingly, he argues that the NRA violates sections 363(*l* ) and 541(c)(1) of the Code.[6]

Whitaker's argument fails for two reasons. First, the application of sections 2(a)(1) and 2(e)(1) of the NRA is contingent on a carrier's operational status, not financial condition. As the Ninth Circuit has held:

> The term "financial condition" represents a concept that is somewhat broader than operational status. In some cases, especially when a business has no potential source of significant revenues other than from its operations, a business's operational condition and financial condition might be considered one and the same. However, because of the unusual nature of the motor freight industry ..., a motor common carrier's solvency or financial condition was not necessarily dependent upon the continuation of operations. There are many former motor common carriers of freight ... that have remained solvent and financially healthy not by continuing their operations, but by turning to the lucrative business of suing their former customers.

*Gumport v. Sterling Press* (*In re Transcon Lines*), 58 F.3d 1432, 1440 (9th Cir.1995). Moreover, in rejecting a claim identical to

---

[6]In further support of his argument, Whitaker cites section 9 of the NRA, which reads:

> Nothing in this Act (including any amendment made by this Act) shall be construed as limiting or otherwise affecting application of title 11, United States Code, relating to bankruptcy; title 28, United States Code, relating to the jurisdiction of the courts of the United States (including bankruptcy courts); or the Employee Retirement Income Security Act of 1974.

49 U.S.C. § 10701 note (1995).

Whitaker's, the Eighth Circuit has stated:

> There is no reason to question the plain meaning of the language used by Congress, however. The distinction between operating and nonoperating carriers is a sensible one that furthers the NRA's purpose. Carriers which are still operating, whether bankrupt or not, have an incentive to maintain good relations with their customers and are less likely to file undercharge claims. Regardless of their financial condition, nonoperating carriers have no such incentive and seem much more likely to pursue undercharge claims.

*Whittier,* 57 F.3d at 649. We agree with the reasoning of the Ninth and Eighth Circuits and hold that section 2 of the NRA is not conditioned on a carrier's insolvency or financial condition.[7]

Whitaker's claim also fails because the small-business exemption to the NRA applies to all carriers, not just those no longer transporting property. Under section 2(a)(1), a party attempting to settle an undercharge claim pursuant to sections 2(a)(2), (3), or (4) must show that the carrier "is no longer transporting property." The small-business exemption, however, requires no such showing from a party invoking its protection. The exemption, NRA section 2(a)(9), reads:

> (9) Claims involving small-business concerns, charitable organizations, and recyclable materials.—Notwithstanding paragraphs (2), (3), and (4), a person from whom the additional legally applicable and effective tariff rate or charges are sought shall not be liable for the difference between the carrier's applicable and effective tariff rate and the rate originally billed and paid—
>
> > (A) if such person qualifies as a small-business concern under the Small Business Act (15 U.S.C. 631 et seq.)....

49 U.S.C. § 10701(f)(9) (1995). We assume that had Congress intended to require a party invoking section 2(a)(9) to show that

---

[7]We note that the Fourth Circuit has reached the same conclusion. *See Cooper v. B & L, Inc. (In re Bulldog Trucking, Inc.),* 66 F.3d 1390, 1397-98 (4th Cir.1995) (*Cooper* ).

the undercharge claimant was "no longer transporting property," it would have included that language within the exemption or included section 2(a)(9) with sections 2(a)(2), (3), and (4) under section 2(a)(1). Indeed, Congress referenced sections 2(a)(2), (3), (4), and (9) together under section 2(a)(7).[8] Consequently, we conclude that the small-business exemption to the NRA applies to all carriers, not just those no longer transporting property. *See Cooper,* 66 F.3d at 1396 ("[T]he requirements of 49 U.S.C. § 10701(f)(1)(A) do not apply to shippers seeking to defeat claims under paragraph 9."); *In re Lifschultz Fast Freight Corp.,* 63 F.3d 621, 631 (7th Cir.1995) ("[T]he conditions set forth in 49 U.S.C. § 10701(f)(1)(A) need not be satisfied in order for a shipper to enjoy the immunity from undercharge claims provided by § 10701(f)(9)."); *Whittier,* 57 F.3d at 648 ("[A] shipper need not prove that a carrier is no longer transporting property before taking advantage of the exemption."). Therefore, the small-business exemption is not contingent on a carrier's insolvency or financial condition.

In sum, section 2 of the NRA does not violate sections 363(*l*) and 541(c)(1)(B) of the Code, and thus the district court properly held that section 2(a)(9) of the NRA insulates Power Brake from Whitaker's undercharge claim.

CONCLUSION

---

[8]Section 2(a)(7) provides: "Limitation on statutory construction.—Except as authorized in paragraphs (2), (3), (4), and (9) of this subsection, nothing in this subsection shall relieve a motor common carrier of the duty to file and adhere to its rates, rules, and classification as required in sections 10761 and 10762 of this title." 49 U.S.C. § 10701(f)(7) (1995).

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.