In re ST. JOHNSBURY TRUCKING COMPANY, INC., Debtor.

ST. JOHNSBURY TRUCKING COMPANY, INC.,
Plaintiff,

v.

MEAD JOHNSON & COMPANY d/b/a Bristol–Myers U.S. Pharmaceutical and Nutritional Group d/b/a Bristol–Myers Squibb U.S. Pharmaceutical Group d/b/a Mead Johnson Nutritional Group and Bristol–Myers Squibb Company, Inc. f/k/a Bristol–Myers Company, Defendants.

Nos. 93 B 43136 (FGC), 95 Civ. 5520 (SS).

United States District Court, S.D. New York.

July 22, 1996.

Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, New York City (Kenneth M. Lewis, New York City, David G. Sperry, Independence, Missouri, of counsel), for Debtor–In–Possession, Plaintiff.

Barnes & Thornburg, Washington, DC, Richard H. Streeter, Follick & Bessich, P.C., Huntington Station, New York (Marrianne Rowden, of counsel), for Defendants.

Wendy H. Schwartz, Assistant United States Attorney, United States Attorney for the Southern District of New York, New York City, for Intervenor United States of America on behalf of the Surface Transportation Board.

## *MEMORANDUM OPINION AND ORDER*

SOTOMAYOR, District Judge.

This bankruptcy case comes before me on defendants' motion for a partial judgment on the pleadings under Fed.R.Civ.P. 12(b)(6) and 12(c). Defendants claim that the Feder-

al Aviation Administration Authorization Act of 1994, 49 U.S.C. § 14501(c) ("FAAAA") preempts plaintiff's intrastate undercharge claims, and I agree. Defendant's motion is, therefore, **GRANTED.**

## BACKGROUND

■ On July 15, 1993, plaintiff St. Johnsbury Trucking Company ("St. Johnsbury") filed for Chapter 11 bankruptcy protection. Beginning in January 1995, plaintiff sued over 400 shippers that were former customers to recover on outstanding "undercharge claims". Undercharge claims are claims for the difference between the regulated rates trucking companies were required by federal and state law to charge their customers, and the lower rates actually charged and collected during the 1980s due to increased competition among trucking carriers. Plaintiff has sought to enlarge its estate by claiming it is entitled to receive the legally mandated and significantly higher rate, notwithstanding legislation Congress enacted to block such claims.

In *St. Johnsbury Trucking Co., Inc. v. Morrison–Knudsen Co., Inc.,* 191 B.R. 22 (S.D.N.Y.1996) (*"Morrison–Knudsen "*), I rejected plaintiff's challenge to the Negotiated Rates Act of 1993, Pub.L. No. 103–180, 107 Stat. 2044, and on January 24, 1996, referred the disposition of all *inter* state undercharge claims brought by plaintiff to the Interstate Commerce Commission, whose duties have now been assumed by the Surface Transportation Board. I also referred the cases back to the Bankruptcy Court as to all other matters.[1] On March 8, 1996, I withdrew the reference from the bankruptcy court pursuant to 28 U.S.C. § 157(d) in every case involving *intra* state claims where a defendant so requested, and consolidated those cases before me for the purpose of addressing the preemptive effect of the FAAAA, with the first defendant herein, "Mead Johnson", acting as "lead" defendant. The facts in the Mead Johnson case are identical to the other intrastate undercharge claims in the St. Johnsbury bankruptcy. In summary, St.

Johnsbury negotiated and collected a price for intrastate shipping that was lower than the rate on file with the relevant state regulatory body, while failing to file that negotiated rate. Now it seeks to recover from Mead–Johnson and the other defendants the difference between the unfiled negotiated rate and the higher filed rate. With this motion, defendants seek to preclude enforcement of St. Johnsbury's intrastate undercharge claims, based on the FAAAA, which took effect on January 1, 1995.

## DISCUSSION

■ A district court's function on a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is to assess the legal feasibility of the complaint. *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991). The issue "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Accordingly, we must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to Plaintiffs. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986). Dismissal is warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

The FAAAA states, in pertinent part:

(c) Motor Carriers of property.—

(1) [Except for regulations not at issue here] a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). Defendants contend that the FAAAA pre-empts state trucking

---

1. For further background on the regulatory history giving rise to undercharge claims, see *Morri-son–Knudsen,* 191 B.R. at 24–26.

rate regulations. They argue that plaintiff's intrastate undercharge claims are based upon state rates which were "regulation[s] ... having the force and effect of law related to a price ... with respect to the transportation of property", hence the claims cannot be enforced under state law. Without a state law predicate, defendants argue that no independent basis exists for enforcement of plaintiff's intrastate undercharge claims. I agree with defendants.

■ The language of the FAAAA strongly indicates a Congressional intent to preempt state enforcement of trucking rates. In fact, virtually identical language in § 1305(a)(1) of the Airline Deregulation Act of 1978 was upheld against a challenge similar to the one brought here. *See Morales v. Trans World Airlines*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) ("Section 1305(a)(1) expressly pre-empts the States from 'enact[ing] or enforc[ing] any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier....'"); *see also American Airlines, Inc. v. Wolens*, —— U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) (affirming the interpretation in *Morales*). In *Morales*, the Court stated that the language barring enactment or enforcement of state laws "express[ed] a broad pre-emptive purpose", which has also been described as "conspicuous for its breadth" in the context of the Employee Retirement Income Security Act of 1974 (ERISA). *Morales*, 504 U.S. at 384, 112 S.Ct. at 2037 (citing *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990)). Because of the clarity of the FAAAA's preemptive intent and the unanimity of the case law on this issue, I find that state trucking price regulations have been pre-empted by the FAAAA.

■ A broad federal pre-emption of the enforcement of state pricing regulations is akin to a repeal of those regulations. Because plaintiff's undercharge claims are based upon the difference between the rate mandated by the state and the one actually charged, no undercharge claim can be maintained without reference to the legally fixed rate. It is well established that "powers derived wholly from a statute are extin-

guished by its repeal." *Battaglia v. General Motors Corp.*, 169 F.2d 254, 259 (2d Cir.), *cert. denied*, 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948). Hence, the effective repeal of the state regulations through the enforcement bar of the FAAAA eliminates the basis for plaintiff's state undercharge claims in any jurisdiction.

1. Retroactivity

Plaintiff concedes that intrastate undercharge claims accruing after January 1, 1995, the date the FAAAA took effect, are precluded, but contends that the Act should not be applied retroactively to claims that accrued before 1995. St. Johnsbury's argument is that those claims became vested rights upon accrual, and because the FAAAA contains no language explicitly asserting its retroactivity, it cannot extinguish those accrued rights.

In support of its position, plaintiff relies exclusively on the analysis in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *Landgraf* involved a Title VII action pending on appeal that petitioner claimed was affected by the subsequent passage of the Civil Rights Act of 1991. *Landgraf*, 511 U.S. at ——, 114 S.Ct. at 1489. In rejecting petitioner's claim, the Court set out a test for retroactivity which St. Johnsbury presents as encompassing its intrastate claims:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach.... When, ... the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.

*Id.* at ——, 114 S.Ct. at 1505.

Plaintiff's reliance on *Landgraf* is misplaced. That case involved a suit that had already been filed and was pending on appeal when the intervening statute was enacted. In the case at bar, the FAAAA took effect on

January 1, 1995, but plaintiff's actions in this case were not even brought until June 13, 1995. Moreover, none of the consolidated cases were filed prior to January 1, 1995. *Landgraf* clearly states that "[w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Id.* at ——, 114 S.Ct. at 1501.

■ At the time of its enactment, the FAAAA affected the propriety of plaintiff's prospective relief for intrastate undercharge claims by denying any possibility of receiving it. Plaintiff was on notice as to the prospective consequences of the Act during Congressional debate, and the four-month period between the passage of the preemption clause and its implementation. *See* Pl.Mem. of Law in Opp'n to Mot. for Partial J. on the Pleadings at 15 (setting out the relevant dates). To claim the benefits of prospective relief under a protestation of retroactivity strains credulity.[2]

Therefore, I conclude that the FAAAA's pre-emption of plaintiff's claims does not apply retroactively.

2. Takings

■ In the alternative, plaintiff contends that the FAAAA's preemption works an unconstitutional "taking" of its property.[3] This argument was rejected by me in *Morrison–Knudsen* and is equally unpersuasive here. *See Morrison–Knudsen,* 191 B.R. at 28. The assertion that the undercharge claim is a property interest severable from the payment originally received for services rendered does not withstand scrutiny. As this Court noted in *Morrison–Knudsen,* plaintiff cannot bite twice from the same apple:

> One must bear in mind, ... that what is at issue is not the entire payment due plaintiff for its trucking services, but rather the difference between what St. Johnsbury it-

self negotiated with the shippers it is now suing and what is allegedly due....

*Id.* I stand by my previous analysis and reject plaintiff's "takings" argument here for the same reasons.

### *CONCLUSION*

For the reasons set forth above, defendants' motion for partial judgment on the pleadings is **GRANTED.** Upon conferring with and notice to plaintiffs, defendants are to submit to the Court by July 31, 1996, a proposed order setting forth for the Clerk of the Court the claims or cases which are dismissed by my ruling and remanding the claims or cases remaining to either the Bankruptcy Court or the Surface Transportation Board, as may be appropriate under my decision in *Morrison–Knudsen.*

**SO ORDERED.**

---

**2.** Similar reasoning was invoked by the Bankruptcy Court in *Salisbury v. S.B. Power Tool,* 191 B.R. 825 (Bankr.C.D.Cal.1996), *appeal pending,* to bar an intrastate undercharge claim. I am aware that there has been a Tentative Ruling on Law and Motion Matters reversing *Salisbury. See In re Industrial Freight System, Inc.,* SA CV 96–333 AHS (C.D.Cal. June 24, 1996). I dis-

agree with that decision to the extent that it focuses exclusively on the effect of the FAAAA, not the type of relief sought.

**3.** "[N]or shall private property be taken for public use, without just compensation." U.S. CONST. amend. V.