**BURLINGTON NORTHERN INC. et al., Petitioners,**

v.

**The UNITED STATES of America and Interstate Commerce Commission, Respondents,**

**Southwestern Electric Power Company, Intervenor.**

**No. 79–1547.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 16, 1982.

Decided March 12, 1982.

Robert Eden Martin, Washington, D. C., with whom Howard J. Trienens, Chicago, Ill., Curtis H. Berg, St. Paul, Minn., Richard J. Metzger, Chicago, Ill., Richard E. Young, Washington, D. C., and Alan R. Post, St. Paul, Minn., were on the brief, for petitioners. John Will Ongman, Washington, D. C., entered an appearance for petitioners.

Kathleen Mary Dollar, Associate Gen. Counsel, I. C. C., Washington, D. C., with whom Richard A. Allen and Cecelia E. Higgins, Attys., I. C. C., and John J. Powers, III and Kenneth P. Kolson, Attys., Dept. of Justice, Washington, D. C., were on the briefs, for respondents. John Howard Broadley and Robert S. Burk, Attys., I. C. C., Washington, D. C., entered appearances for respondents.

John Michael Cleary, Frederic Loring Wood, and Nicholas James DiMichael, Washington, D. C., were on the brief for intervenor.

Before ROBINSON, Chief Judge, WRIGHT, Circuit Judge, and NORTHROP,* Senior District Judge.

Opinion PER CURIAM.

PER CURIAM:

Burlington Northern Inc. (BN) appears before us on a petition for review of the decision of the Interstate Commerce Commission in *Annual Volume Rates on Coal—*

---

* Of the United States District Court for the District of Maryland, sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

*Wyoming to Flint Creek, Arkansas (Flint Creek III)*, 364 ICC 753 (1981), which set a maximum reasonable rate, effective July 1, 1978, for coal shipments from Belle Ayr, Wyoming to the Southwestern Electric Power Company (SWEPCO) plant in Flint Creek. Two recent opinions in other circuits have addressed substantially identical arguments raised by BN in other proceedings. *See Cleveland Cliffs Iron Co. v. ICC*, 664 F.2d 568 (6th Cir. 1981); *Iowa Power & Light Co. v. Burlington Northern, Inc.*, 647 F.2d 796, 797 (8th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982). Because we agree with almost everything stated in those opinions, there is no need for an extended discussion of the principles that apply to this case.

BN's various assertions can be sorted into three broad categories: a challenge to the Commission's jurisdiction to set a maximum rate below 160 percent of BN's variable costs, a set of purported errors of law and fact in the Commission's application of its negotiated rate policy to this case, and two errors of law with respect to the Commission's calculation of BN's fully allocated costs. We deal with each in turn.

■ We are satisfied that the Commission had jurisdiction to investigate BN's proposed rate and set a maximum rate below 160 percent of variable costs, because Section 202 of the Staggers Rail Act, 49 U.S.C.A. § 10709(d)(2) (1981 pocket part), does not apply to this case. Like the proceedings under review in *Cleveland Cliffs* and *Iowa Power*, this case was pending on petition for review on the date when the Staggers Act became effective. Although it was subsequently remanded to the Commission for reconsideration, the legal and factual issues had already been extensively litigated before the Commission, and the issues involved related to events and rates that antedated the Staggers Act by several years. Under the circumstances, it would work a substantial and manifest injustice on SWEPCO to force it to relitigate these issues before a court, and it would be a poor use of judicial resources as well as those of the parties to duplicate the Commission's

competent efforts on these issues. Accordingly, the Staggers Act should not apply retroactively to this case. *See Cleveland Cliffs, supra*, 664 F.2d at 589–591; *Iowa Power, supra*, 647 F.2d at 803, 807.

■ With respect to BN's asserted errors of law in the Commission's application of its negotiated rates policy to this case, we adopt the holdings and analyses presented in *Cleveland Cliffs* and *Iowa Power*. Neither the policy itself nor its application in this case violated the Administrative Procedure Act. *See* 664 F.2d at 573–576; 647 F.2d at 811–812. As in the two earlier cases, the Commission merely considered the parties' 1975 letter of understanding as one factor, albeit an important factor, in determining a maximum reasonable rate. *See* 364 ICC at 761–762. Furthermore, neither the policy itself nor its application in this case violates the substantive provision governing the Commission's regulation of railroad rates, 49 U.S.C.A. § 10704(a)(2) (1981 pocket part). The Commission was within its discretion in deciding that the statutory goal of revenue adequacy would best be served in the long run by a policy favoring negotiated ratemaking, so long as the resulting rates are not grossly inequitable. *See* 647 F.2d at 810–811.

■ BN has also challenged the Commission's factual determination that the parties to the 1974 letter of understanding intended to be bound by it. We find no lack of substantial evidence in the record supporting the Commission's view of the facts on this issue.

Finally, BN argues that the Commission acted arbitrarily in two aspects of its calculation of BN's costs: failing to consider the cost of equity as well as debt capital in calculating recoverable costs attributable to locomotives and cabooses, and excluding all capital investments in the Commission's "Rail Form A" formula. As an initial matter, we note that the Commission's methodology made precise calculation of costs relatively unimportant. The issue framed by the Commission was whether the agreed-upon rate was substantially different from or grossly inequitable in light of BN's fully

allocated costs. *See* 364 ICC at 760. Answering this question does not require exact cost calculations; reasonable approximation will do. *See Unit Train Rates on Coal—Burlington Northern, Inc.*, 364 ICC 186, 193 (1980), aff'd sub nom. *Iowa Power & Light Co. v. Burlington Northern, Inc.*, 647 F.2d 796, 797, 810 (8th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982).

■ As far as the cost-of-capital issue is concerned, we adopt the holding and reasoning in *Cleveland Cliffs.* It was not arbitrary to look to BN's equipment trust certificates to make a reasonable estimate of its cost of capital on locomotives and cabooses. *See* 664 F.2d at 583–584. We are somewhat less comfortable with the Commission's total exclusion of Rail Form A investments. This approach differed significantly from what we recommended in *San Antonio, Texas v. United States*, 631 F.2d 831, 842–843 (D.C.Cir.1980), and what the Commission has recently stated as its general policy, *Coal Rate Guidelines—Nationwide*, Ex Parte No. 347 (Sub–1) at 8 (ICC December 16, 1981). Nevertheless, it is difficult to believe that inclusion of BN's fully allocated costs attributable to investments not related to coal traffic would render the agreed-upon rate "grossly inequitable." Properly adjusted Rail Form A cost figures would be substantially lower than the figures submitted by BN. And even the Commission's new guidelines involve a fair amount of cross-subsidization of noncoal traffic by coal traffic, because noncoal traffic makes regular use of coal-related investments, the costs of which are allocated only among coal shippers. *See San Antonio, supra*, 631 F.2d at 844 & n.69. For these reasons, and because BN has not submitted completely reliable data, *see Cleveland Cliffs, supra*, 664 F.2d at 581–582, we find no reversible error in the Commission's calculations.

Accordingly, the Commission's *Flint Creek III* decision sought to be reviewed herein is

*Affirmed.*