In re B.C.B. DISPATCH, INC., Debtor.

John H. RING III, Trustee of the Debtor's Estate of B.C.B. Dispatch, Inc., Plaintiff,

v.

WEGMANS FOOD MARKETS, INC., Defendant.

In re DAWSON TRANSPORT, INC., Debtor.

William E. LAWSON, Trustee of the Debtor's Estate of Dawson Transport, Inc., Plaintiff,

v.

TRY–IT DISTRIBUTING CO., INC., Defendant.

Bankruptcy Nos. 93–10993 K, 94–11127 K. Adv. Nos. 96–1059 K, 95–1293 K.

United States Bankruptcy Court, W.D. New York.

Oct. 2, 1996.

John H. Ring III, Cheektowaga, NY, Trustee for B.C.B. Dispatch, Inc.

Raymond A. Selvaggio, George Carl Pezold, Augello, Pezold & Hirschmann, P.C., Huntington, NY, for Wegmans Food Markets, Inc.

William E. Lawson, Buffalo, NY, Trustee for Dawson Transport, Inc.

Bridget M. Faso, Inc., Giardino & Schober, LLP, Buffalo, NY, for Try–It Distributing Co., Inc.

MICHAEL J. KAPLAN, Chief Judge.

These two otherwise unrelated adversary proceedings present an identical legal question, and have been consolidated here only for purposes of this decision. The Court today holds that undercharge claims on intrastate shipments that occurred before Congressional nullification of state regulations of that field, did not survive.

In the Chapter 7 case of B.C.B. Dispatch, this matter comes before the Court on Defendant's Motion for Partial Summary Judgment on the Plaintiff–Trustee's action, under 11 U.S.C. § 541 and New York Transportation Law §§ 178 and 179 (McKinney 1994), to recover undercharges on intrastate shipments which occurred prior to enactment of the Federal Aviation Administration Authorization Act of 1994 (hereinafter "FAAAA") Pub.L. No. 103–305, 108 Stat. 1605, 49 U.S.C. § 14501. In the alternative, Defendant seeks to have this matter referred to the New York State Department of Transportation to the extent it relates to undercharges on intrastate shipments. With respect to the Trustee's action to recover undercharges on interstate shipments, Defendant seeks a stay of the action before this Court and referral to the Surface Transportation Board (formerly known as the Interstate Commerce Commission).

The Chapter 7 case of Dawson Transport, Inc. involves a similar action by the Trustee for undercharges on intrastate shipments. The Defendant seeks dismissal of the Trustee's action under Federal Rule of Civil Procedure 12(b)(6), 12(c), and 15.[1] In the alternative, Defendant requests a stay of these proceedings and referral of the Trustee's action to the New York State Department of Transportation.

Debtors in these cases are motor carriers who performed under shipping contracts at rates which were less than the tariff rates on file with the New York Department of Transportation and/or the Surface Transportation Board. In the Dawson case there is a factual dispute as to whether or not Dawson was acting (during the time period in question) under common carrier or contract carrier status, but in light of today's holding, that dispute is of no moment.

Prior to the enactment of the FAAAA, bankruptcy trustees routinely sought recovery of the difference between the rates charged under such shipping contracts and those which were mandated under state and federal law ("undercharge claims"). With respect to intrastate claims in New York, these actions were brought under New York Transportation Law §§ 178 and 179. Section 179 provides that, "No common carrier of property by motor vehicle shall charge, demand, collect or receive a different compensation for transportation or for any service in connection therewith ... than the rates and charges specified in the tariffs in effect at the time of shipment...." Section 178 provided the vehicle by which a Trustee could claim such undercharges: "It shall be the duty of every common carrier of property to establish, observe and enforce just and reasonable rates, charges and clarifications, and just and reasonable regulations and practices relating

---

1. Although, in Dawson, the Trustee's complaint alleged possible interstate undercharges pursuant to 49 U.S.C. § 10761, *see* Complaint ¶ 7, through subsequent pleadings the parties seem to agree that only intrastate shipments are at issue, *see* Affidavit of Michael Shemanick ¶ 16 (supporting Try–It's Notice of Motion (June 21, 1996)); Trustee's Opposition to Defendant's Motion for Dismissal or for Stay and Referral (July 9, 1996).

thereto." Undercharges on interstate shipments are sought on authority of comparable federal provisions.

Subsequent to the shipments in question, but prior to the Trustees' actions for undercharges, Congress enacted the FAAAA, which provided, in pertinent part, that,

> ... a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... with respect to the transportation of property.

49 U.S.C. § 14501(c)(1) (effective Jan. 1, 1995).

While all parties to these litigations agree that sections 178 and 179 are state laws "related to a price, route, or service of any motor carrier ... with respect to the transportation of property," the parties disagree as to the effect of the FAAAA on the Trustees' intrastate undercharge claims. The Trustees rely mainly on the Supreme Court decision in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), and maintain that the statute cannot be applied retroactively to extinguish their rights to collect undercharges under sections 178 and 179 as those rights existed at the time the shipments in question occurred. The Defendants rely primarily on three recent decisions specifically addressing this issue—*St. Johnsbury Trucking Co. v. Mead Johnson et al. (In re St. Johnsbury Trucking),* 199 B.R. 84 (S.D.N.Y.1996), *Salisbury v. S.B. Power Tool (In re Industrial Freight System),* 191 B.R. 825 (Bankr.C.D.Cal.1996) and *Noonan v. Cellu Tissue Corp. et al. (In re Palmer Trucking Co.),* 201 B.R. 9 (Bankr. D.Mass.1996).

There may be a distinctly separate body of law for each of the following: (1) the retroactivity of statutes, in general; (2) the retroactivity of repealers and similar nullifications of existing law (where the existence of a "savings clause" is particularly useful); (3) federal statutes that preempt a field that has not yet been regulated by a state; and (4) federal statutes that preempt a field that has already been regulated by a state (also fertile field for "savings clauses"). Furthermore, different rules may pertain to causes of action that are already the subject of a lawsuit at the time of a new statute, as opposed to actions not yet sued. Here there is a clear federal preemption of a field already regulated by the state, but as to which no suit had been brought before the enactment of the FAAAA or before its stated effective date, January 1, 1995. If the outcome would be different under the body of law regarding retroactivity of nullifications such as repealers, as opposed to the body of law pertaining to federal preemption of fields already regulated by the state, then it would be necessary for this Court to decide which body of law applies to the exclusion of the other. But this Court concludes that whether one applies principles of retroactivity or principles of preemption, the result is the same in this case, and the Court may issue concurrent holdings, leaving the resolution of the academic question of otherwise competing considerations to Constitutional scholars.[2]

## RETROACTIVITY

The Supreme Court's decision in *Landgraf* is the primary source for guidance when discussing the retroactive or prospective nature of a statute. In *Landgraf,* the Supreme Court recognized the opposing axioms which present themselves in this area of statutory interpretation. On the one hand, courts generally are required to apply the law in effect at the time it renders its decision, regardless of the law in effect at the time the action was instituted or the cause of action accrued. If the law has changed since the action was instituted or since the cause of action accrued, then applying the law in effect at the time of the rendering of the decision obviously may constitute a grant of

---

**2.** The Supreme Court case of *American Airlines, Inc. v. Wolens,* —— U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), dealt with identical statutory language but did not engage in a retroactivity discussion. Both retroactivity and preemption are found here because the state statute in question was already in place at the time of the preemption, whereas in the case of *Wolens,* the preemptive federal statute had already been in effect at the time the state law cause of action arguably accrued.

retroactive effect to the change. On the other hand, retroactivity is not favored in the law, and a statute should not be applied retroactively unless Congress evinces a clear intent that it should be so applied. In *Landgraf*, the Supreme Court provided a roadmap.

■ First the Court must determine whether Congress has prescribed the statute's proper reach by expressly addressing the issue of retroactivity. "If Congress has done so, of course, there is no need to resort to judicial default rules," said the Supreme Court. *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1505. But if the statute contains no express command regarding retroactivity, then the court

> must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively [as so defined], our traditional presumption teaches us that it does not govern absent clear Congressional intent favoring such a result.

*Id.*

■ To the extent that any of the three other courts that have addressed this question suggest that the language of the FAAAA quoted earlier in this decision (prohibiting a State, political subdivision of the State, etc. from enacting "or enforcing" any law, regulation, or other provision related to price, route or service) constitutes a clear statement of retroactivity, this Court respectfully, but vigorously, disagrees. Although in actions under 11 U.S.C. § 541 this Court sits as a state court would in a state court action for freight undercharges, and although a state court is an instrumentality of the state, no court of record is involved in the business of "enforcement" of any statute, and judges (other than administrative law judges) are not law enforcement officers. "Enforcement" of the law is an executive function, and to some extent the executive may elect what laws it

will or will not enforce, and where. When Congress has sought to bar courts of record from *applying* otherwise existing laws, it has unequivocally done so in unambiguous language. *See, e.g.*, 43 U.S.C. § 2011(c) (1986) ("No State or local court shall have jurisdiction of any claim whether in a proceeding instituted before, on, or after the date this chapter becomes effective.") (dealing with crude oil transportation systems); 15 U.S.C. § 1673(c) (1982) ("No court of the United States or any State, and no State (or officer or agency thereof), may make, execute, or enforce any order or process in violation of this section.") (containing federal restrictions on garnishment); 12 U.S.C. § 91 (1989) ("[N]o attachment, injunction, or execution, shall be issued … in any suit, action, or proceeding, in any State, county, or municipal court.").

■ Hence, this Court does not believe that any language of the FAAAA addresses the question of retroactive application in courts of record (as opposed to administrative courts of the executive branch of a state).[3]

■ Following the Supreme Court's teaching in *Landgraf*, therefore, we must now look to determine whether application of the FAAAA "would impair rights [that the Debtors here] possessed when [they] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1505.

In this case, the right that the Trustees seek to assert was not a common law right; rather, it was a right derived from a statute enacted by the state in implementation of its efforts to regulate intrastate trucking. Indeed, the statute was in derogation of the common law right to contract for a mutually agreeable rate.

■ "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment…." *Landgraf*, 511

---

**3.** The fact that Congress chose to make express provision regarding state action, but said nothing as to the applicability of the FAAAA to past conduct does not rise to the level of a "savings provision," in this Court's view.

U.S. at 269, 114 S.Ct. at 1499. Therefore, the mere fact that these shipments occurred prior to enactment of the FAAAA does not mean that applying it now would be giving it retroactive effect.

In *Landgraf,* the Court quoted an earlier principle that "every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already passed, must be deemed retrospective." *Id.* (quoting *Society for Propagation of the Gospel v. Wheeler,* 22 F.Cas. 756).

Presumably, a statute that does none of the above should be applied even to past conduct. In the present Court's view, it is obvious that the FAAAA was, essentially, a repealer (albeit a Congressional repeal of state law) and consequently it did not create a new obligation or impose a new duty. Nor does repeal of a statutory cause of action attach a "new disability." And, perhaps of greatest moment, it did not impair a "vested right" because an expectancy that a right bestowed by statute and statute alone is going to continue does not rise to the level of a vested right: "A right cannot be regarded as vested, ... unless it amounts to something more than a mere expectation of future benefit or interest founded upon an anticipated continuance of the existing general laws." [4]

This Court thus concludes that application of the FAAAA today to the events in question would not constitute "retroactive effect," and consequently it is the law in effect today that must be applied. In light of preemption, the applicable law is the federal law, and the Trustees are left with no remedy.

### PREEMPTION

The result is the same if the matter is treated as one invoking principles of preemption only.

Given the decision of the United States Supreme Court in the case of *American Airlines, Inc. v. Wolens,* —— U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), which involved preemptive language identical to that of the FAAAA, it is beyond cavil that the FAAAA "preempts" state law regulating surface transportation. It has been said that once preempted, "the authority of the states is necessarily excluded, and any state legislation on the subject is void." [5]

More specifically, it has been stated as to matters affecting interstate commerce that

[a]ny power which the states have exercised over interstate commerce by reason of congressional inaction ceases to exist from the moment that Congress exerts its paramount authority over the subject by enacting a statute that covers the same subject matter as, or is in direct conflict with, a state statute, even if, by the terms of the act of Congress, it is not to take effect until a future date. The exercise of power by Congress under such circumstances is not only supreme and paramount but also exclusive, superseding the state law and excluding additional or further regulation covering the same subject by the state legislature, regardless of whether the state regulations were adopted with respect to matters incidentally affecting such commerce or were enacted as a proper exercise of the police power.[6]

Presumably, Congress acted because of a legislative finding that the states' regulation of intrastate rates materially affected interstate commerce, and it is ostensibly because of the several principles quoted above that the District Court for the Southern District of New York stated in *St. Johnsbury Trucking,* that "a broad federal pre-emption of the enforcement of state pricing regulations is *akin to a repeal of those regulations.*" *St.*

---

4. 16A Am.Jur.2d *Constitutional Law* § 669 (1979). Although clear case authority for this proposition is elusive, cases that acknowledge a distinction between "mere expectancies" and "vested expectancies" are legion. This Court cannot offer sage guidance as to that distinction, but knows that it *exists* and knows that an expectation of the continuation of a statutory cause of

action that is in derogation of a "bargained-for exchange," falls short of a "vested right."

5. 16 Am.Jur.2d *Constitutional Law* § 291 (1979).

6. 15A Am.Jur.2d *Commerce* § 33 (1976) (citations omitted).

*Johnsbury Trucking,* 199 B.R. at 87 (emphasis added). That characterization was a stepping stone to the District Court's conclusion that the case was governed by the principle that "powers derived wholly from a statute are *extinguished by its repeal.*" *Id.* (emphasis added) (quoting *Battaglia v. General Motors Corp.,* 169 F.2d 254 (2d Cir.), *cert. denied,* 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948)).

 Thus it can be seen that if principles governing retroactivity are not applicable to the nullification (the "effective repeal") of a state statute that is accomplished by federal preemption, then that nullification seems always to have the immediate effect of voiding pre-existing causes of action arising "wholly" under the state statute (at least if not already sued).[7]

## CONCLUSION

The intrastate claims in the B.C.B. Dispatch case are dismissed. Because the Trustee stipulated in open court to take the interstate claims to the Surface Transportation Board, the balance of his complaint against Wegmans is dismissed without prejudice to continuing them before the Surface Transportation Board.

In the Dawson case, it seems that only intrastate claims are involved, and they are dismissed.

Each Defendant may submit a suitable Order directing Judgment on the merits. The parties shall bear their own costs.

SO ORDERED.

---

**7.** The Trustee argues that when Congress made the FAAAA effective on January 1, 1995 (several months after enactment), that constituted a command that it be given effect only as to future conduct by carriers. The Court disagrees. At most, that effective date provision left a window within which to commence suit. The present actions were not commenced within that window. (The Court expresses no opinion as to the effect of the FAAAA on undercharge actions sued before January 1, 1995.) True "effective date" provisions such as the one in question are decisively different from those that are really "savings provisions," *e.g.* "this statute shall be effective as to conduct occurring on and after...."