**STATE of Texas, Appellant,**

v.

**Robert M. FOLEY d/b/a F & F Materials Co., Appellee.**

No. 03–96–00673–CV.

Court of Appeals of Texas, Austin.

Aug. 14, 1997.

---

6. *See Bruton v. United States*, 391 U.S. 123, 137, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476, 485–86 (1968).

7. *See id.*

Dan Morales, Attorney General, Joe Foy, Jr., Assistant Attorney General, Energy Division, Austin, for Appellant.

Robert L. Seibert, Goodall, Davison & Goldsmith, L.L.P., Austin, for Appellee.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

1. The federal statute at issue in this case now appears at volume 49, section 14501 of the United States Code. When the statute was first enacted, however, it appeared at volume 49, section 11501 of the United States Code. *See* Federal Aviation Administration Authorization Act of 1994, Pub.L. No. 103–305, § 601(c), 108 Stat. 1569 (1994) (effective Jan. 1, 1995) (49 U.S.C.A. § 11501, repealed and recodified at 49 U.S.C.A. § 14501 by the Interstate Commerce Commission Termination Act of 1995, Pub.L. No. 104–88, 107 Stat. 803 (1995)); *see also Californians for Safe & Competitive Dump Truck Transp. v. Mendonca,* 957 F.Supp. 1121, 1123 n. 3 (N.D.Cal. 1997). Because the recodification of the statute did not effect any substantive change, we will cite to the current provision for convenience.

2. The Texas Motor Carrier Act was formerly located at Texas Revised Civil Statutes article

CARROLL, Chief Justice.

This case requires us to decide whether a federal statute[1] precludes enforcement by the State of Texas of an order by the Texas Railroad Commission deciding a contested case that was pending before the Commission when the federal statute was enacted. The district court concluded that the federal statute preempted enforcement and granted summary judgment to appellee Robert M. Foley d/b/a F & F Materials Co. We agree and will affirm the district court's judgment.

## THE CONTROVERSY

In 1990, the Railroad Commission began administrative proceedings against Foley for operating without a certificate of convenience and necessity in violation of the Texas Motor Carrier Act.[2] In mid–1994, the Commission issued an "Interim Order" assessing $19,000 in penalties against Foley. The Commission did not, however, issue a final order until February 13, 1995, some six weeks *after* the effective date of the federal statute. Foley did not comply with the Commission's final order. Neither did he seek judicial review of the Commission's order in district court. *See generally* Tex. Gov't Code Ann. §§ 2001.171 to 2001.178 (West Supp.1997).

In April 1995, the Commission asked the Attorney General of the State of Texas to institute an enforcement proceeding in district court against Foley. The Attorney General did so on May 10, 1995, pursuant to the Administrative Procedure Act ("APA"). *See id.* § 2001.202 (West Supp.1997).[3] Foley in

911b. It was repealed effective September 1, 1995. *See* Act of May 24, 1995, 74th Leg., R.S., ch. 705, § 31(a)(4), 1995 Tex. Gen. Laws 3719, 3740.

3. Section 2001.202 provides,

(a) The attorney general, on the request of a state agency to which it appears that a person is violating, about to violate, or failing or refusing to comply with a final order or decision or an agency rule, may bring an action in a district court authorized to exercise judicial review of the final order or decision or the rule to:
(1) enjoin or restrain the continuation or commencement of the violation; or
(2) compel compliance with the final order or decision or the rule....

turn moved for summary judgment on the sole basis that the federal statute preempted the Commission from issuing and the State from enforcing the final order after January 1, 1995. *See* 49 U.S.C.A. § 14501 (West 1997) ("section 14501"). The trial court agreed and ordered that the State take nothing. The State appeals by one point of error, contending the trial court erred as a matter of law by granting summary judgment on preemption grounds.

■ Both parties disagreed below and both disagree on appeal about two things: (1) whether the Commission had authority to issue the final order after January 1, 1995; and (2) whether the State had authority to seek enforcement of the order after January 1, 1995. We will address each question in turn.[4]

### STANDARD OF REVIEW

■ Because the propriety of summary judgment is a question of law, we review the trial court's decision *de novo*. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). The standards of review of a summary judgment are well settled: (1) the movant must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in

the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ Foley bore the burden of proving conclusively every element of his defense. *See, e.g., City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). We must, therefore, address whether Foley established as a matter of law that section 14501 preempted the Commission from issuing the final order and whether section 14501 preempts the State from seeking to enforce the order.

### DISCUSSION

■ Under the supremacy clause of the United States Constitution, federal law may preempt state law either by express provision, by implication, or by a conflict between federal and state law. *N.Y. Conference of Blue Cross v. Travelers Ins.*, 514 U.S. 645, 653–55, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995); *see also* U.S. Const. Art. VI. We presume federal law does not bar the state's exercise of its historic police powers unless Congress clearly expresses the intent to preempt such state action. *N.Y. Conference*, 514 U.S. at 653–55, 115 S.Ct. at 1676. We must decide, consequently, whether Congress expressed in section 14501 a clear intent to bar the type of state action at issue here.

Section 14501 generally prohibits states from regulating the price, route, or service of any motor carrier. *See* 49 U.S.C.A. § 14501(c).[5] This general rule has two ex-

---

Tex. Gov't Code Ann. § 2001.202(a).

4. This case did not arise under the provisions of the APA that govern judicial review of an administrative order. *See generally* Tex. Gov't Code Ann. §§ 2001.171 to 2001.178. It arose under the provision of the APA that allows the State to seek enforcement of an administrative order. *See* Tex. Gov't Code Ann. § 2001.202. We do not interpret that provision as authority for Foley to attack collaterally the Commission's order. However, we are mindful that a party aggrieved by an administrative order issued outside an agency's statutory authority may challenge the validity of the order outside the context of an administrative appeal. *See Texas Educ. Agency v. Cypress–Fairbanks I.S.D.*, 830 S.W.2d 88, 90 (Tex.1992); *City of Sherman v. Public Util. Comm'n of Tex.*, 643 S.W.2d 681, 683 (Tex.1983). Therefore, we will address the issue of whether

the Commission had authority to issue the order despite that Foley did not challenge it in an administrative appeal.

5. Section 14501 reads in relevant part:

**Federal authority over intrastate transportation**

\* \* \* \* \* \*

(c) **Motor carriers of property.—**
(1) **General rule.**—Except as provided in [subsequent paragraphs], a State, a political subdivision of a State, or political authority of 2 or more States may not enact *or enforce* a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... or any motor private carrier, broker, or freight

ceptions, set forth in section 14501(c)(2), (3). Foley argued before the trial court that his conduct did not fall within either exception. The State did not controvert that argument. In fact, the State concedes that the Commission ceased regulation of the motor carrier industry before January 1, 1995, presumably because the Commission recognized that such regulation would be preempted on that date.

■ The State contends the Commission's post-January 1, 1995, activity with respect to Foley did not constitute *regulation,* but was instead mere *enforcement* of previous regulation. The State explained at oral argument that the Commission had already made its decision in the case in 1994 when it issued the "Interim Order." According to this argument, the final order did not constitute any new regulatory activity; it merely memorialized the prior decision. This argument is not persuasive because section 14501 expressly prohibits both the *imposition* of regulation and the *enforcement* of regulation. *See* 49 U.S.C.A. § 14501(c)(1). At best, the Commission's order imposing penalties was an attempt to enforce state regulation in contravention of section 14501.

■ The State primarily relies before this Court (and relied before the trial court) on one argument. That is, the State contends section 14501 does not preempt the Commission's action because section 14501 is a substantive law that applies prospectively rather than retroactively. The State reasons that, because the Commission's administrative proceeding was already pending when the statute became effective and was based on *conduct* that occurred before the statute went into effect, the statute does not apply. For support, the State cites *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) and subsequent cases, which establish that substantive statutory amendments apply prospectively unless Congress expresses an intent to apply them retroactively. The State also points out that the repeal of a federal statute is presumed not to affect pending federal matters. *See* 1 U.S.C.A. § 109 (West 1985). Finally, the State cites several federal cases holding that the enactment of another deregulation statute, the Staggers Rail Act, did not affect pending appeals of federal administrative cases. *See Burlington N., Inc. v. United States,* 679 F.2d 915 (D.C.Cir.1982); *Cleveland–Cliffs Iron Co. v. Interstate Commerce Comm'n,* 664 F.2d 568 (6th Cir.1981); *Iowa Power & Light Co. v. Burlington N., Inc.,* 647 F.2d 796 (8th Cir.1981). The authorities cited by the State are distinguishable from the case at bar because they concern only the effect of changes in federal law on pending federal proceedings. They do not concern the preemption doctrine and the effect of changes in federal law on pending state administrative proceedings.

■ Foley contends the retroactivity issue is a red herring and that the law of preemption, a distinct body of law, applies. According to Foley, a preemption statute necessarily applies to cases pending upon the effective date of the statute and no retroactivity analysis need be conducted. Foley cites no authority for this proposition.[6] We need not decide whether the law of preemption is completely distinct from the law concerning the retroactive application of statutes. Even applying the law of retroactivity, we reach the same result: section 14501 applies to cases pending before a state regulatory agency on January 1, 1995.

Congress in section 14501 expressly prohibited states from enacting and enforcing *any* laws and regulations related to prices, routes, or services of motor carriers, *effective*

forwarder with respect to the transportation of property.

    *     *     *     *     *     *

49 U.S.C.A. § 14501(c) (italics added).

**6.** Foley does cite four cases from the bankruptcy courts of California. *See In re Industrial Freight System, Inc.,* 191 B.R. 825 (Bkrtcy.C.D.Cal. 1996); *In re Palmer Trucking Co.,* 201 B.R. 9 (Bkrtcy.D.Mass.1996); *In re B.C.B. Dispatch, Inc.,* 201 B.R. 629 (Bkrtcy.W.D.N.Y.1996); *In re St. Johnsbury Trucking Co., Inc.,* 199 B.R. 84 (Bkrtcy.S.D.N.Y.1996). The court in one case, *Industrial Freight,* implied the retroactivity argument was a red herring. The other three courts, however, addressed the retroactivity argument in deciding whether certain state action was preempted by section 14501. None of the cases definitively states that the law of retroactivity never applies to preemption statutes.

*January 1, 1995.* 49 U.S.C.A. § 14501(c)(1). Congress did not merely prohibit the state from enacting *new* laws or regulations after that date; it prohibited the state from imposing its past laws on motor carriers after that date. To the extent state regulatory actions were pending on January 1, 1995, Congress clearly intended section 14501 to apply retroactively. The Commission's issuance of the order fell squarely within the purview of section 14501's prohibition because it occurred after January 1, 1995. We overrule the State's point of error insofar as it concerns the Commission's authority to issue the final order.

The State further argues its attempt to enforce the Commission's order is too remotely, tenuously, or peripherally related to the preempted regulatory conduct to fall within the preemption doctrine. The State cites *Morales v. Trans World Airlines,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), and *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334 (5th Cir.1995), for support. All three cases concern whether certain state action is preempted by a federal statute. In *Morales,* the court held federal deregulation of the airline industry precluded state attorneys general from seeking to compel air carriers to comply with guidelines adopted by the National Association of Attorneys General. *Morales,* 504 U.S. at 383–90, 112 S.Ct. at 2036–40. As the State points out, however, the court in *Morales* intimated there may be some situations in which the effect of a state's action against a deregulated industry is "too remote" to be preempted. *Id.* at 390, 112 S.Ct. at 2040. The courts in *Wolens* and *Hodges* held federal deregulation of the airline industry did not preclude state courts from entertaining certain common law tort and contract actions based on the actions of air carriers. *See Wolens,* 513 U.S. at 232–34, 115 S.Ct. at 826; *Hodges,* 44 F.3d at 336–37. The State argues these cases establish an exception to the preemption doctrine for situations in which state action is too tenuously, remotely, or peripherally related to the subject matter of a deregulation statute to be preempted.

■ The language emphasized by the State is nothing more than an application of the already well established principles of the preemption doctrine. That is, courts are charged with interpreting deregulation statutes to determine whether Congress intended to preempt whatever state action is offensive to the plaintiff in a given case. *See N.Y. Conference,* 514 U.S. at 653–54, 115 S.Ct. at 1676; *Morales,* 504 U.S. at 383, 112 S.Ct. at 2036–37. Saying state action is too remote, tenuous, or peripheral to fall within a deregulation statute is just another way of saying the legislature did not intend to prohibit the state action of which the plaintiff complains. *E.g., Californians for Safe & Competitive Dump Truck Transp. v. Mendonca,* 957 F.Supp. 1121, 1128 (N.D.Cal.1997) (court discusses the word "tenuous" as used in *Morales* before holding section 14501 does not preempt state from enforcing prevailing wage laws against motor carriers). The cases cited by the State do not carve out an exception to the preemption doctrine; they simply set forth a corollary to the preemption doctrine.

■ Whether we construe *Morales, Wolens,* and *Hodges* as setting forth an exception or a corollary, the State's action in this case is not too remotely related to the type of action prohibited in section 14501. Section 14501 prohibits state action "related to" the prices, routes, or services of any motor carrier. Its language is broad and encompasses state action connected with or referencing those subjects. *See* H.R. Conf. Rep. No. 103–677, 103d Cong., 2d Sess. 85 (1994), U.S. Code Cong. & Admin. News 1994 at pp. 1676, 1757. (preemption provision in predecessor to section 14501 is identical to the preemption provision in the Airline Deregulation Act and is intended to function in the same way with respect to its preemptive effects); *Morales,* 504 U.S. at 383–84, 112 S.Ct. at 2036–37 (in construing the Airline Deregulation Act, the Supreme Court noted the words "relating to" express Congress's broad purpose to prohibit state enforcement actions having a "connection with" or a "reference to" airline rates, routes, or services). The State is attempting to enforce a penalty that was originally proposed to coerce Foley

into complying with the Commission's regulatory requirements or to punish him for failing to comply. Because we have already held section 14501 preempted the Commission from issuing the order and because the enforcement proceeding is inextricably tied to the underlying administrative proceeding, we hold the State is preempted from maintaining this enforcement action. We overrule the remainder of the State's point of error. We express no opinion as to whether section 14501 would preclude enforcement of a final administrative order issued before January 1, 1995. This case does not present those facts.

## CONCLUSION

We have held volume 49, section 14501 of the United States Code and its predecessor statute preempted the Railroad Commission of Texas from issuing the order regarding Foley's failure to obtain a certificate of convenience and necessity, and, therefore, preempted the State from seeking to enforce the order. Accordingly, we affirm the judgment of the trial court.