In re OLYMPIA HOLDING
CORPORATION et al.,
Debtors.

OLYMPIA HOLDING CORPORATION
et al., Plaintiff,

v.

GAYNOR ELECTRIC CO.,
INC., Defendant.

Bankruptcy No. 90–04195–BKC–3P7.
Adversary No. 92–21409.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 19, 1998.

Lloyd Whitaker, Atlanta, Georgia, trustee.

Steven M. Pesner, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York City, Robert D. Wilcox, Jacksonville, Florida, John B. MacDonald, Brant, Moore, MacDonald & Wells, Jacksonville, Florida, for plaintiff.

Stephen W. Beyer, Augello, Pezold & Hirschmann, P.C., Huntington, New York, Sol H. Proctor, Jacksonville, Florida, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE DEFAULT AND JUDGMENT BY DEFAULT

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This adversary proceeding came on for consideration of the defendant's motion to set aside default and judgment by default pursuant to:

a. Judge Corcoran's Administrative Lead Case Initial Case Management Order entered on March 5, 1998, and the First Supplement thereto entered on July 6, 1998, in Adversary No. 91–00192, *Lloyd T. Whitaker, etc. v. Sportsstuff, Inc.* (Documents Nos. 25 and 32A);

b. the parties' Stipulation Regarding Pending Motions to Vacate Default Judgments filed on May 18, 1998, in that adversary proceeding (Document No. 30); and

c. the parties' Stipulation Regarding Pending Motions to Vacate Default Judgments filed on July 10, 1998, in that adversary proceeding (Document No. 33) [a copy of which also appears in this adversary proceeding as Document No. 15].

Pursuant to the court's orders and the parties' stipulations, the parties have designated this adversary proceeding as the "lead case" for the 24 proceedings in the "excusable neglect" group as set forth in the schedule appearing as Attachment 1 to the stipulation described in paragraph (c) above. Accordingly, the decision contained in this order applies to all of the proceedings in that "excusable neglect" group.

As the file reflects, the defendant has filed its motion containing an affidavit and legal memorandum (Document No. 16), the plaintiff has filed his opposing legal memorandum (Document No. 17), and the defendant has filed its reply memorandum (Document No. 18). In consideration of these papers and the entire file, therefore, the court decides the issues as follows:

### PROCEDURAL POSTURE

On May 19, 1993, the clerk entered a default against the defendant for failure to plead or otherwise defend as provided by the rules after being served with process on November 2, 1992 (Document No. 6). On May 20, 1993, the court entered an order granting the plaintiff's motion for the entry of judgment and a separate judgment by default in the amount of $2,848.59 (Documents Nos. 7 and 8). Less than a month later, on June 16, 1993, the defendant filed its original motion and affidavit to set aside the default and judgment by default (Document No. 9). The

defendant also filed a proposed answer and affirmative defenses (Document No. 11).

Because this was one of literally thousands of adversary proceedings raising the same kinds of "undercharge" claims assigned to the undersigned judge, the court took no action on the motion pending the development with counsel of an agreed framework within which to determine the many issues pending in these adversary proceedings. Ultimately, the court and counsel developed such a framework as set forth in the orders described in paragraph (a) above. Accordingly, the parties have now briefed the issues for the court's determination.

## FACTS

On October 16, 1990, Olympia Holding Corporation, formerly known as P*I*E Nationwide, Inc., filed for relief under Chapter 11 of the Bankruptcy Code. The court later converted the case to a case under Chapter 7, and the plaintiff became the Chapter 7 trustee. The adversary proceeding in one of approximately 32,000 asserting the same kinds of claims filed by the plaintiff in the bankruptcy case.

The debtor was a motor carrier that shipped freight for the defendant before the filing of the bankruptcy case. In late 1992, the plaintiff brought this adversary proceeding against the defendant. Among other claims, the plaintiff seeks to recover amounts allegedly owed to the debtor arising from "undercharges," the differences between the undiscounted or published rates and the discounted rates actually billed to and paid by the defendant.

The plaintiff served the defendant by U.S. Mail on November 2, 1992, as permitted by the rules. The defendant is a relatively small company that does not have in-house counsel or employ a full-time attorney. When the president of the defendant received the suit papers, he sent the package to an attorney "to determine a course of action and have the matter attended to." Heche aff. at ¶ 7.

The president presumed that "the matter was being taken care of and did nothing further" until he received copies of the default judgment papers that the court entered in May 1993. *Id.* at ¶ 8. When the president then inquired about why it had not been handled by the lawyer to whom he had sent it, the law firm could provide no explanation except that the individual lawyer involved had left the firm. "[A]pparently, the matter had been lost and forgotten in the transition." *Id.* at ¶ 9. The president promptly employed new counsel who moved to set aside the default and the judgment less than a month after the court had entered them. *Id.* at ¶ 10.

## DISCUSSION

### The Legal Standards

The court may set aside a judgment by default "in accordance with Rule 60(b)" for "*mistake, inadvertence,* surprise, or *excusable neglect.*" F.R.Civ.P. 55(c), incorporated by F.R.B.P. 7055; F.R.Civ.P. 60(b)(1) [emphasis added], incorporated by F.R.B.P. 9024.

"In order to establish mistake, inadvertence, or excusable neglect, the defaulting party must show that: (1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *Florida Physician's Insurance Co. v. Ehlers,* 8 F.3d 780, 783 (11th Cir.1993). Our court of appeals established this formulation for setting aside a judgment by default well after the Supreme Court decided *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), a case that construes "excusable neglect" in the context of filing a proof of claim after the bar date. *Ehlers,* therefore, sets forth the criteria under which the defendant's motion must be tested.

### Applying the Standards

1. *Does the defendant have a meritorious defense that might affect the outcome?*

In this adversary proceeding, the defendant has defenses, among others, stemming from *Whitaker v. Frito–Lay, Inc. (In re Olympia Holding Corp.),* 88 F.3d 952 (11th

Cir.1996), the Negotiated Rates Act of 1993, and *Whitaker v. Power Brake Supply, Inc. (In re Olympia Holding Corp.)*, 68 F.3d 1304 (11th Cir.1995). Indeed, *Frito–Lay* and *Power Brake Supply* are cases that came out of this very bankruptcy case. Were the court to adjudicate the plaintiff's claims on their merits, it is not at all clear that the plaintiff would obtain judgment against the defendant. In these circumstances, therefore, the defendant plainly has meritorious defenses to assert.

2. *Will the plaintiff be prejudiced if the court sets aside the judgment by default?*

The defendant moved to set aside the judgment by default less than a month after the court entered it. Despite the entry of the default and judgment by default, there has been no substantial delay in bringing this proceeding to issue caused by the defendant.

It is true that the plaintiff filed this proceeding as long ago as 1992 and the court entered the judgment by default in 1993. Any delay in reaching the merits of this proceeding, however, stems from the fact that there were originally some 32,000 of these proceedings with which to deal. The multitude of proceedings has necessitated an organized and methodical approach by the court and the parties to determine a myriad of issues. It is true that much time has passed, but this delay cannot be attributed to the defendant.

Although many of the common issues have been—and are being—resolved by the courts, not a single one of these proceedings has actually yet gone to trial. Thus, had the defendant filed its answer immediately upon being served, this proceeding and the plaintiff would be in the same position in which they will be if the court now sets aside the judgment by default. In these circumstances, the court can find no prejudice that the plaintiff will suffer if the court were to set aside the judgment by default.

3. *Does the defendant have a good reason for failing to reply to the complaint?*

From the perspective of the defendant, the defendant did all that could be expected of it to defend the complaint properly and appropriately. When it received the summons and complaint, the defendant engaged counsel to defend. Although it would have been better had the president of the debtor followed up with counsel after a few weeks to confirm that counsel was handling the matter as counsel should have been, the defendant did entrust the matter to the hands of counsel and could reasonably expect that counsel was handling the matter appropriately. Although *counsel* may not have a good reason for failing to reply to the complaint, the *defendant* itself surely does have a good reason, that is, counsel's failure to follow through as requested by the defendant.

*Weighing the Standards*

Each of the three elements a defaulting party must show to establish mistake, inadvertence, or excusable neglect under *Ehlers* weighs in favor of setting aside the judgment by default in this case. The plaintiff, however, relies on Eleventh Circuit authorities in which the court has not relieved a party from the consequence of counsel's negligence. *See, e.g., Cavaliere v. Allstate Insurance Co.*, 996 F.2d 1111, 1115 (11th Cir.1993) [affirming denial of Rule 60(b) motion; decided very shortly after *Pioneer*, but not citing *Pioneer* ]; *Solaroll Shade & Shutter Corp. v. Bio–Energy Systems, Inc.*, 803 F.2d 1130, 1132 (11th Cir.1986) [attorney's negligent failure to respond to a motion does not constitute excusable neglect; decided years before *Pioneer* ]. The plaintiff then argues that "negligent" failure by a defendant's counsel to respond to a summons and complaint cannot constitute "excusable neglect" as a matter of law.

■ Contrary to the plaintiff's argument for an absolute rule, whether excusable neglect can be found turns on a consideration of all factors applied by the court in an exercise of its sound judicial discretion. As the court of appeals recently wrote:

While we have been at some pain to define "excusable neglect" in different fact situations [citations omitted], [t]he Supreme Court has now clarified the meaning of "excusable neglect" in *Pioneer Investment Services Co. v. Brunswick Associates*

*Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). There the Court held that a bankruptcy court abused its discretion by refusing to permit the late filing of a proof of claim pursuant to Bankruptcy Rule 9006(b)(1). In reaching its decision, the Court reviewed the meaning of excusable neglect in the context of analogous rules that allow for late filings. It stated that *"for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence."* Id. at 394, 113 S.Ct. at 1497. The Court concluded that *whether a party's neglect of a deadline may be excused is an equitable decision turning on "all relevant circumstances surrounding the party's omission."* Id. at 395, 113 S.Ct. at 1498 (citations and footnotes omitted). *The factors we must weight include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."* Id.

*Cheney v. Anchor Glass Container Corp.,* 71 F.3d 848, 849–50 (11th Cir.1996) [emphasis added].

Notably, *Cheney* involved a plaintiff's failure to file, in the 30–day period required by District Court Local Rule 8.05(b), a timely motion for trial de novo after court-annexed arbitration. The reason for the late filing was a failure in communication between plaintiff's lead counsel and the associate attorney working in his office. "The nonfiling was simply an innocent oversight by counsel." Id. at 850. The court weighed all of the circumstances and concluded that the district court had abused its discretion by not relieving the plaintiff from this failure.

Not only do the *Ehlers* factors weigh in favor of setting aside the default, all of the other circumstances of this case, as identified in *Cheney,* weigh the same way. The defendant's delay in presenting its defenses was "simply an innocent oversight by counsel." The record contains nothing suggesting bad faith on the part of the defendant that would justify preventing the defendant from receiving a determination of the proceeding on its merits. The defendant responded immediately to correct counsel's error when it learned of it. The delay that has occurred has had no impact on the proceeding as a whole; had the defendant timely filed its answer and defenses, this proceeding would be no further along toward determination on its merits than it will be if the court sets aside that judgment.

Moreover, in *Ehlers* itself, the court held that "[w]ith respect to the third element [good reason for failing to reply], 'a technical error or a slight mistake' by a party's attorney should not deprive the party of an opportunity to present the merits of his claim." *Ehlers* at 783. The court then specifically noted its conflict with the older *Solaroll Shade* decision upon which the plaintiff relies. In the circumstances of this case, counsel's error in failing to respond can fairly be characterized as "a technical error or a slight mistake" that has had no negative impact on the plaintiff or on the adversary proceeding. Holding the defendant to the judgment by default in the circumstances of this case would indeed be championing technical form over substance.

### Conclusion

For all of these reasons and based upon all of these relevant circumstances, the court concludes that the defendant has demonstrated mistake, inadvertence, or excusable neglect in connection with failing to respond timely to the plaintiff's complaint. Accordingly, the court grants the defendant's motion to set aside default and judgment by default. The court hereby vacates the default and the judgment by default. The proposed answer and affirmatives defenses (including counterclaim) previously filed by the defendant are deemed timely filed.